1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10  MINA LEAP TOR,

11            Petitioner,                    No. CIV S-03-1137 LKK PAN P

12       vs.

13  A.A. LAMARQUE, Warden,

14            Respondent.            FINDINGS AND RECOMMENDATIONS

15  _____/

16            Petitioner is a state prisoner proceeding in propria persona with an application for

17  a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his September 21,

18  2000, conviction on numerous counts of lewd and lascivious acts on children under fourteen

19  years of age, CAL. PENAL CODE §§288, 647.6, one count of continuous sexual abuse of a child,

20  one count of annoying or molesting a child under 18, CAL. PENAL CODE §288.5, CAL. PENAL

21  CODE §647.6, one count of dissuading a witness, CAL. PENAL CODE §136.1(b)(1), and one count

22  of being a felon in possession of a firearm, CAL. PENAL CODE §12021(a).

23            Petitioner appealed his convictions to the California Court of Appeal, Third

24  Appellate District which affirmed the majority of the convictions in its unpublished opinion filed

25  September 13, 2002.  Petitioner then sought review by the California Supreme Court.  Review

26  was denied summarily on November 26, 2002.

1

In this petition, filed May 28, 2003, petitioner raises four claims that his prison sentence violates the United States Constitution. These claims relate to the same operative facts dealt with in the opinion of the state appellate court. Respondent makes no claim that petitioner has failed to exhaust his state court remedies, and, in fact, this petition raises only claims which have been fully exhausted.

                                    FACTS[1]

> Defendant lived with his girlfriend and her four daughters, who were born in 1982, 1983, 1984, and 1991. From August 1995 through February 2000, defendant committed a number of acts involving substantial sexual contact with the three youngest girls. Sometimes, these acts occurred when one of the girls was at home sick and defendant sought to "examine" her. The youngest daughter testified that defendant committed numerous sexual offense against her when she was as young as five years old.

> At trial, medical experts testified that physical findings were consistent with the described abuse. Counselors and police officers described the girls as tearful, reluctant, embarrassed, and nervous when reporting defendants' [sic] acts.

> Defendant testified at trial and denied all charges. He asserted the girls fabricated their claims, because they were mad at him and wanted them out of their house.

> Some of the trial testimony related to a conviction petitioner sustained in 1989. At that time, T.P. was 15 years old and defendant was 20. They had gone out a few times. T.P. testified that, on one occasion, defendant tricked her into accompanying him to his motel by claiming he needed to get something. When they entered his room, T.P. went to the bathroom. She emerged to find defendant stripped down to his underwear. He grabbed her, pushed her onto the bed, and had sex with her. The jury in that case convicted defendant of forcible rape, but the trial court reduced the conviction to one for unlawful sexual intercourse, and the jury in the present case was informed of this history pursuant to a stipulation.[[2]]

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Tor, No.# C037022 (September 19, 2002) (hereinafter Opinion), a copy of which is attached as Exhibit F to Respondent's Answer, filed September 2, 2003.

[2] Following the jury verdict, the trial court in the 1989 case reduced petitioner's conviction for forcible rape to unlawful sexual intercourse under the authority of California Penal Code section 1181. That section states:

The jury convicted defendant on 10 of the 12 charged counts, and found charged enhancements to be true.  Sentenced to an aggregate prison term of 49 years to life, defendant appeals.

(People v. Tor, slip op. at 2-4).

Petitioner alleges that: (1) the trial court erred by introducing evidence of a prior conviction in violation of the collateral estoppel doctrine and his Fifth Amendment right to be free from double jeopardy; (2) the trial court abused its discretion by permitting the jury to consider evidence of a prior conviction to assess petitioner's credibility; (3) the trial court violated petitioner's Sixth and Fourteenth Amendment rights by permitting inadmissible character evidence; and (4) the trial court violated petitioner's due process rights by admitting testimony by documentary evidence of plaintiff's prior conviction.

## ANALYSIS

I.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

> When a verdict has been rendered or a finding made against the defendant,...when the verdict or finding is contrary to the law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the case may be appealed.

CAL. PENAL CODE §1181(6).

3

1    Under section 2254(d)(1), a state court decision is "contrary to" clearly

2    established United States Supreme Court precedents if it applies a rule that contradicts the

3    governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

4    indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

5    result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

6    (2000)).

7    Under the  "unreasonable application" clause of section 2254(d)(1), a federal

8    habeas court may grant the writ if the state court identifies the correct governing legal principle

9    from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

10    prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

11    simply because that court concludes in its independent judgment that the relevant state-court

12    decision applied clearly established federal law erroneously or incorrectly.  Rather, that

13    application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63,

14    123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent

15    review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

16    The court looks to the last reasoned state court decision as the basis for the state

17    court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

18    II.  Petitioner's Claims

19    A. Collateral Estoppel and the Double Jeopardy Clause of the Fifth Amendment

20    Petitioner's first claim is that the admission of evidence of his prior conviction

21    violates the doctrine of collateral estoppel and the Fifth Amendment to the Constitution.

22    Petitioner contends that testimony about the specific events that led to his conviction in 1989 for

23    unlawful intercourse unconstitutionally permits relitigation of and resentencing for those acts.

24    Petitioner argues that he should not have been forced to "run the gauntlet" a second time and

25    defend himself at this trial for his prior acts.  Green v. United States, 355 U.S. 184, 190, 78 S.Ct.

26    221, 225, 2 L.Ed.2d 199 (1957).

4

The last reasoned rejection of this claim is the decision on petitioner's appeal to the Court of Appeal for the State of California, Third Appellate District.  The state appellate court rejected this claim on the ground that:

> The collateral estoppel doctrine precludes relitigation of an ultimate fact that has been determined by a valid and final judgment.  (*People v. Catlin,* [(2001)]*,* 26 Cal.4th at pp. 123-124.)  Whether the 1989 offense was forcible or not was not an ultimate fact to be determined in the present case involving crimes on three other victims.

> Moreover, both the United States and California Supreme Courts have held that the collateral estoppel doctrine does not preclude the admission of evidence, introduced in a trial that results in acquittal, from being introduced for all purposes in a subsequent proceeding.  (*Dowling v. United States* (1990) 493 U.S. 342, 348-350 [107 L.Ed.2d 708, 717-719]; *People v. Catlin, supra,* 26 Cal.4th at p. 124; see *People v. Griffin,* (1967) 66 Cal.2d 459, 464.)  The earlier acquittal means simply that that offense was not established beyond a reasonable doubt; it does not mean that it did not occur.  (*People v. Catlin, supra,* 26 Cal.4th at p. 124, *People v. Griffin, supra,* 66 Cal.2d at p. 466, fn. 3.)  "[A]n acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof."  (*Dowling v. United States, supra,* 493 U.S. at p. 349 [107 L.Ed.2d at p. 718.])

> Defendant asserts that, while that may be true when the prior case involves an actual acquittal, a different rule should apply when an implied acquittal is involved.  This claim is illogical.  If evidence of a prior offense can be introduced when the defendant has been acquitted of the offense, the same should also be true when a defendant's conviction is reduced to another offense pursuant to Penal Code section 1181.  The fact that defendant's rape conviction was reduced to one for unlawful sexual intercourse established only that the prosecution was unable to prove a forcible act beyond a reasonable doubt.  "In the present case, however, the prosecution was not required to establish that fact beyond a reasonable doubt or, indeed, to prove it at all."  (*People v. Catlin, supra,* 26 Cal.4th at p. 125.)

> Defendant essentially argues that it was unfair to permit the prosecution to introduce evidence relating to a forcible assault on T.P.  However, this evidence was introduced to establish facts relating to the offenses committed against three other victims, not to relitigate defendant's responsibility for the offenses against T.P.  In keeping with the mandates of *People v. Griffin, supra,* 66 Cal.2d at page 265, the jury was informed that the trial court had reduced defendant's rape conviction to one for unlawful sexual intercourse,

5

and in this trial defendant suggested that the reduction reflected adversely on T.P.'s credibility as a witness.  Although defendant contends the jury may have believed defendant was not sufficiently punished for the assault on T.P. and therefore opted to punish him more severely in the present case, such a claim is entirely speculative.  (See *People v. Catlin, supra,* 26 Cal.4th at pp. 126-127; see also *Dowling v. United States*, supra, 493 U.S. at pp. 353-354 [107 L.Ed.2d at p. 721.])

Defendant's claims go to the weight, not the admissibility of the evidence.  "As long as the evidence properly was admitted, as we have determined it was, the weight to be accorded the evidence was for the jury to decide."  (*People v. Catlin, supra,* 26 Cal.4th at p. 127)

(People v. Tor, slip op. at 17-20.)

The Double Jeopardy Clause to the Fifth Amendment incorporates the doctrine of collateral estoppel.  Ashe v. Swenson, 397 U.S. 436, 90 S.Ct 1189, 25 L.Ed.2d 469 (1970). Collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."  Id. at 443, 90 S.Ct. at 1194.  However, the doctrine does not absolutely preclude the admission of relevant and probative evidence at a subsequent proceeding simply because it relates to alleged criminal conduct for which a defendant has been acquitted.  Dowling v. United States, 493 U.S. 342, 348, 110 S.Ct. 668, 672, 107 L.Ed.2d 708 (1990).

One such permissible basis upon which to admit evidence of prior misconduct is for the purpose of proving intent, plan, motive or absence of mistake under Federal Rule of Evidence 404(b).  Huddleston v. United States, 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988).  Federal Rule of Evidence 404 generally precludes the admission of character evidence to show action in conformity therewith and is virtually identical to California Rule of Evidence section 1101.[3]  The issue of ultimate fact determined at a criminal trial and to

[3]Federal Rule of Evidence 404 reads:

(a) Character Evidence Generally.  Evidence of a person's character or a trait of character is not admissible for the purpose of proving

action in conformity therewith on a particular occasion, except:

(1) Character of Accused.  Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same, or if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under Rule 404(a)(2), evidence of the same trait of character of the accused offered by the prosecution;

(2) Character of Alleged Victim.  Evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor;

(3) Character of Witness.  Evidence of the character of a witness, as provided in rules 607, 608, and 609.

(b) Other Crimes, Wrongs, or Acts.  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

California Evidence Code section 1101 reads:

(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or

7

1  which the doctrine of collateral estoppel applies is guilt beyond a reasonable doubt.  However,

2  the lower standard of admissibility required for evidence of prior bad acts at trial makes the

3  collateral estoppel component of the Double Jeopardy Clause inapplicable.  <u>Dowling</u>, 493 U.S. at

4  348-349, 110 S.Ct. at 672; <u>see also</u> <u>United States v. One Assortment of 89 Firearms</u>, 465 U.S.

5  354, 361-362, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984)("It is clear that the difference in the

6  relative burdens of proof in the criminal and civil actions precludes application of the doctrine of

7  collateral estoppel.)

8          The Supreme Court has clearly determined that under federal law evidence of

9  prior acquittals is admissible in a subsequent criminal prosecutions when that evidence is

10  employed to show motive, intent, absence of mistake or a similar, permissible reason.  The

11  Supreme Court of California has reached the same conclusion.  <u>People v. Catlin</u>, 26 Cal.4th 81

12  (Cal.2001)("[T]he collateral estoppel doctrine does not prohibit the admission of evidence that

13  has been introduced in a trial resulting in an acquittal from being admitted for all purposes in a

14  subsequent proceeding."); <u>compare</u> <u>State v. Holman</u>, 611 S.W.2d 411 (Tenn.1981)(holding that

15  under the Tennessee Constitution an acquittal by a Tennessee state court renders the evidence

16  less than clear and convincing and therefore not relevant in subsequent trials); <u>State v. Perkins</u>,

17  349 So.2d 161 (Fla.1977).  The trial court's admission of plaintiff's previous criminal activity

18  was a proper exercise of its discretion and cannot be considered contrary to, nor an unreasonable

19  application of, controlling principles of United States Supreme Court precedent.

20          Given the lower standard of admissibility when compared to guilt beyond a

21  _____

22  her disposition to commit such an act.

23  
24  (c) Nothing in this section affects the admissibility of evidence
    offered to support or attack the credibility of a witness.

25  

26

1  reasonable doubt, it is of no consequence that plaintiff was functionally acquitted of forcible rape

2  when his conviction was reduced by the trial court to unlawful sexual intercourse.  Collateral

3  estoppel is concerned with successive prosecutions, not their outcomes.  Brown v. Ohio, 432

4  U.S. 161, 167, fn. 6, 97 S.Ct. 2221, 2226, fn. 6 (1977)("noting that the doctrine of collateral

5  estoppel bars "successive prosecutions"); Ohio v. Johnson, 467 U.S. 493, 500 fn. 9, 104 S.Ct.

6  2536, 2541, fn. 9, 81 L.Ed.2d 425 (9184).  The Double Jeopardy Clause protects against multiple

7  prosecutions for the same offense; however, "the introduction of relevant evidence of particular

8  misconduct in a case is not the same thing as prosecution for that conduct."  United States v.

9  Felix, 503 U.S. 378, 387, 112 S.Ct 1377, 1383, 118 L.Ed.2d 25 (1992).

10        In the present case, the Court of Appeal correctly concluded that testimony by T.P.

11  concerning the forcible rape for which plaintiff was originally convicted prior to its reduction to

12  unlawful intercourse was introduced not to prosecute plaintiff a second time for his 1989 actions,

13  but rather, to establish similarities between the prior act and the charged offenses.  These

14  similarities included several key details that established plaintiff's modus operandi, including the

15  fact that "the victims were all young" and "they all had a trusting relationship with the

16  defendant."  (RT 86.)  Such a purpose is permissible.

17        The court did not abuse its discretion in permitting evidence of petitioner's prior

18  sexual assault.  The lower standard of admissibility for evidence relating to prior bad acts makes

19  the doctrine of collateral estoppel under the Double Jeopardy Clause of the Fifth Amendment

20  inapplicable.  As a result of the fact that the burden for the admission of evidence is less than

21  beyond a reasonable doubt, petitioner's acquittal for forcible rape is of no significance, regardless

22  of its source.  Petitioner's first claim for relief should be denied.

23        B.  Evidence of a Prior Conviction to Impeach Petitioner's Credibilty

24        Petitioner's second claim is that the trial court erred by admitting evidence of his

25  prior conviction for the purposes of permitting the jury to assess his credibility.  Petitioner states

26  that his previous conviction was not for a crime of moral turpitude and could therefore not be

1  used to attack the veracity of his testimony.  He argues that it was unrealistic to expect the jury to

2  limit their analysis of T.P.'s testimony solely to assess petitioner's credibility.

3       The California Court of Appeal addressed this claim as follows:

4       Defendant contends the court erred in admitting his 1989
   conviction for impeachment purposes, because the offense for
5       which he was convicted, unlawful sexual intercourse, is not a
   crime of moral turpitude.  We disagree.

6

7       Initially, we note that the Attorney General asserts the prosecutor
   never asked defendant whether he had been convicted of a felony.
   The record demonstrated otherwise.  In her final three questions to
8  defendant during recross-examination, the prosecutor asked
   whether defendant had been convicted of a felony on November
9  18, 1989, whether that felony had occurred in San Joaquin County,
   and whether that felony involved T.P..  Defendant responded
10 affirmatively to each of these inquiries.

11      This impeachment was proper.

12      Under [California Evidence Code] section 788, "a defendant who
   testifies may be impeached with a prior conviction of any felony
13 evincing moral turpitude, defined as 'general readiness to do evil.'
   [Citation.]  Only if 'the least adjudicated elements of the
14 conviction necessarily involve moral turpitude' is the conviction
   admissible for impeachment. [Citation.]

15

16      "The 'least adjudicated elements' test means that 'from the
   elements of the offense alone – without regard to the facts of the
17 particular violation – one can reasonably infer the presence of
   moral turpitude.' [Citations.]  In other words, a court need not
18 determine that a criminal statute could be violated only with evil
   intent in order to find that a conviction under that statute evinces
19 moral turpitude, because it is possible to imagine a set of
   circumstances under which almost any statute might be violated
20 without evil intent; only a "'substantial assurance that the
   credibility of a witness is adversely affected by his having suffered
21 [a] conviction"' for a given offense is required." (*People v.
   Campbell, supra,* 23 Cal.App.4th at p.1492, italics omitted.)

22      Citing *People v. Flanagan* (1986) 185 Cal.App.3d 764 and *People
   v. Fulcher* (1987) 194 Cal.App.3d 749, defendant asserts the
23 appellate courts are divided on the question of whether unlawful
   sexual intercourse is a crime of moral turpitude.  The people, too,
24 refer to a split of authority on this issue.  While the two cited cases
   answer that question differently, the cases are easily reconciled.
25 There is no difference of opinion.

26      In *Flanagan,* the defendant's prior conviction for statutory rape

preceded *People v. Hernandez* (1964) 61 Cal.2d 529, 535-536, in which the California Supreme Court recognized as a defense to statutory rape a defendant's mistaken, but reasonable and good faith belief that the victim was at least 18 years of age.  (*People v. Flanagan, supra,* 185 Cal.App.3d at p. 772)  The *Flanagan* court concluded that the defendant might therefore have a reasonable and good faith belief that the victim was more than 18.  (*Id.* at pp. 772-773.)  "It is important to note that a violation of the statute did not require that the defendant be aware of the female's age.  It is the absence of this culpable mental state as a necessarily adjudicated element of statutory rape that persuades us defendant's prior conviction did not involve moral turpitude."  (*Id.* at p. 772.)

The *Flanagan* decision was expressly predicated on the fact that the prior conviction antedated *Hernandez*.  A different result was reached in *People v. Fulcher, supra,* 194 Cal.App.3d at pp. 753-754, because the prior conviction occurred after *Hernandez*.

The *Fulcher* court noted that the crime of statutory rape was repealed and reenacted as "unlawful sexual intercourse" in Penal Code section 261.5, which provides: "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, where the female is under the age of 18 years." (*People v. Fulcher, supra,* 194 Cal.App.3d at p. 753.)

*Fulcher* explained: "And added to this definition by [*Hernandez*] is the holding that a defense to such a charge exists where the accused had held, in good faith, a reasonable belief that the prosecutrix has attained the age of consent, i.e., 18 years.  *People v. Hernandez* also states, referring to statutory rapes as defined by the court: 'The object and purpose of the law are too plain to need comment, the crime too infamous...to bear discussion' [citation], and that '[t]here can be no dispute that a criminal intent...exists when the perpetrator proceeds with utter disregard of, or in the lack of grounds for, a belief that the female has reached the age of consent[.]'" (*People v. Fulcher, supra,* 194 Cal.App.3d at p. 753, italics omitted.)

Therefore, *Fulcher* stated, for convictions since 1964, "the Penal Code, as interpreted by *People v. Hernandez, supra,* proscribed sexual intercourse with a female under the age of 18 years by one without a good faith and reasonable belief that the female was of the age of consent, and that such is an '*infamous*' crime. [¶] Under the Penal Code and under *People v. Hernandez, supra*, we hold that the crime of 'statutory rape' or 'unlawful sexual intercourse' indicates a 'general readiness to do evil,' and that it is thus necessarily a crime involving 'moral turpitude.'" (*People v. Fulcher, supra,* 194 Cal.App.3d at pp. 753-754.)

Here, defendant's prior conviction for unlawful sexual intercourse occurred in 1989, 25 years after *Hernandez* was decided.

11

1    Defendant's conviction necessarily established that the proscribed
     act occurred without a good faith and reasonable belief that the
2    victim was over the age of consent.  Had the evidence been
     otherwise, defendant could have presented that as a defense and the
3    jury would not have convicted him.  While defendant focuses his
     attention on the dissenting opinion in *Fulcher*, we believe the
4    majority's assessment is correct: The crime of unlawful sexual
     intercourse, as defined by the Penal Code and *Hernandez*, is a
5    crime of moral turpitude.  (See also *People v. Massey* (1987) 192
     Cal.App.3d 819, 822-823.)

6
     Defendant contends that, if this prior conviction was admissible for
7    impeachment purposes, the court should have sanitized it and
     permitted reference only to an unspecified felony conviction.
8    Defendant's claim is entirely academic.  We cannot pigeon-hole
     this particular complaint and view it in isolation.  The facts relating
9    to defendant's prior conviction were admissible under sections
     1108 and 1101.  Once the court decided to admit this evidence,
10   defendant himself sought to introduce evidence that the court
     reduced the rape conviction to one for unlawful sexual intercourse.
11   In fact, defendant first raised the possibility in a written motion
     filed before the motions in limine were even decided.  Defendant
12   agreed to the stipulation outlining the prior jury verdict and
     subsequent reduction to unlawful sexual intercourse.  He then used
13   this history to emphasize that T.P. was not a credible witness.
     Under these circumstances, defendant cannot now assert that the
14   prior conviction should have been sanitized.

15   The trial court properly permitted defendant to be impeached with
     his prior conviction for unlawful sexual intercourse.  (See *People
16   v. Kwolek* (1995) 40 Cal.App.4th 1521, 1532-1534.)

17   (People v. Tor, slip op. at 12-17.)

18           In his second complaint, plaintiff has not alleged any violation of his federal

19   rights.  As such, a federal habeas court has no authority to review challenges to state-court

20   determinations of state-law questions.  Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 480

21   (1991).  Habeas review is limited to determining whether a conviction violated the Constitution,

22   laws, or treaties of the United States.  28 U.S.C. §2241; Rose v. Hodges, 423 U.S. 19, 21, 96

23   S.Ct. 175, 177, 46 L.Ed.2d 162 (1975).  A federal habeas court "cannot review questions of state

24   evidence law" and may only consider "whether the petitioner's conviction violated constitutional

25   norms."  Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).

26   (9th Cir. 1991).

1    Petitioner has not made any showing that the admission of evidence concerning

2    his prior felony conviction violated due process or his right to a fair trial.  The testimony of T.P.

3    was a small part of the total evidence against petitioner at trial.  Each of the victims testified

4    about the acts of molestation committed by the accused upon them.  In addition, the girls

5    provided corroborative details to reinforce their testimony as well as the testimony of the other

6    victims.  Investigators confirmed these corroborative details in addition to providing other

7    incriminating evidence, including evidence of prior statements that were used to impeach

8    petitioner's testimony.  The medical evidence in the case was consistent with the alleged abuse.

9    Additionally, the trial court properly instructed the jury about the permissible uses

10   to which the T.P.'s testimony could be put.  (RT 1071.)  There is no reason to think that jurors

11   failed to understand or follow this instruction.  As such, it must be presumed that the jurors

12   utilized the challenged evidence solely for the purposes it was admitted, including to impeach

13   petitioner's testimony.  See  Francis v. Franklin, 471 U.S. 307, 324 n.9, 105 S.Ct. 1965, 85

14   L.Ed.2d 344 (1985)("The court presumes that jurors, conscious of the gravity of their task, attend

15   closely to the particular language of the trial court's instructions in a criminal case and strive to

16   understand, make sense of, and follow the instructions given them.")

17   The evidence concerning plaintiff's prior conviction was a small part of an

18   extensive and compelling case against petitioner.  Petitioner has failed to make the requisite

19   showing that the admission of evidence concerning his prior conviction, or the trial court's

20   determination that his crime was one of moral turpitude, was such a grievous error that it

21   rendered his trial fundamentally unfair or resulted in a complete miscarriage of justice.  See

22   Jammal, 926 F.2d at 919.  Petitioner's second claim for relief should be denied.

23        C.  Admission of Prior Act to Show Common Plan

24   Petitioner's third claim is that the trial court's admission of evidence of the prior

25   conviction for the purpose of showing some relevant fact such as preparation or plan violates the

26   Sixth and Fourteenth Amendments to the Constitution by prejudicially introducing evidence of

13

1    character to prove conduct on a specific occasion.  As in his first claim for relief, petitioner

2    argues that T.P.'s testimony about his prior acts is inadmissible character evidence under

3    California Evidence Code section 1101.[4]  Petitioner argues that evidence relating to this prior act

4    was impermissibly offered to show his character and disposition to perform such acts in general.

5              The California Court of Appeal addressed this claim as follows:

6              The trial court also admitted challenged evidence relating to
         defendant's prior offense under [California Evidence Code] section
7         1101, and informed the jury that this evidence could be used to
         show intent, common plan, or scheme.  Defendant contends this
8         ruling was erroneous.  There was no prejudicial error.

9              Section 1101, subdivision (a) precludes the use of character
         evidence to prove conduct on a specified occasion.  But
10        subdivision (b) of that statute provides in relevant part: "Nothing in
         this section prohibits the admission of evidence that a person
11        committed a crime...when relevant to prove some fact (such
         as...intent...[or] plan,...) other than his or her disposition to commit
12        such an act."

13             Plaintiff contends the court erred in instructing that evidence of the
         1989 incident could be considered when determining defendant's
14        intent.  He asserts that, if the jury disbelieved his denial that the
         acts occurred and instead believed the victims' testimony, intent
15        was not at issue.  We agree.

16             A similar situation arose in *People v. Balcom* (1994) 7 Cal.4th 414.
         In that case, the victim testified that defendant forced her to engage
17        in sex, but the defendant asserted the victim consented.  (*Id.* At p.
         422.)  The Supreme Court noted: "These wholly divergent
18        accounts create no middle ground from which the jury could
         conclude that defendant committed the proscribed act of engaging
19        in sexual intercourse with the victim against her will by holding a
         gun to her head, but lacked criminal intent because, for example,
20        he honestly and reasonably, but mistakenly, believed she
         voluntarily had consented. [Citation.]  On the evidence presented,
21        the primary issue for the jury to determine was whether defendant
         forced the complaining witness to engage in sexual intercourse by
22        placing a gun to her head.  No reasonable juror considering this
         evidence could have concluded that defendant committed the acts
23        alleged by the complaining witness, but lacked the requisite intent

24   _____

25         [4]  See supra note 2 for California Evidence Code section 1101.  The court notes that
     petitioner refers to section 1101(b) as the basis to exclude impermissible character evidence.  The
     more applicable section is 1101(a).  The court analyzes petitioners argument based upon the
26   assumption that he intended to cite 1101(a).

                                             14

to commit rape."  (*Ibid.*)

The court concluded: "Defendant's plea of not guilty put in issue all of the elements of the offenses, including his intent [citation], and evidence that defendant committed uncharged similar offenses would have some relevance regarding defendant's intent in the present case.  But, because the victim's testimony that defendant placed a gun to her head, if believed, constitutes compelling evidence of defendant's intent, evidence of defendant's uncharged similar offenses would be merely cumulative on this issue.  [Citation.]  Accordingly, we conclude that the limited probative value of the evidence of uncharged offenses, to prove intent, is outweighed by the substantial prejudicial effect of such evidence."  (*People v. Balcom, supra,* 7 Cal.4th at pp. 422-423.)

The same analysis applies here.  If the jury believed the victim's testimony that the charged acts occurred, there could have been no dispute as to defendant's intent in committing those acts.  Defendant's intent was apparent from the nature of the acts committed, and evidence of the 1989 offense was cumulative on this issue.  The prejudicial effect of this evidence outweighed its limited probative value on the question of intent, and it should not have been admitted for that purpose.  (*People v. Balcom, supra,* 7 Cal.4th at pp. 422-423.)

However, as in *People v. Balcom, supra,* 7 Cal.4th at page 423, the fact that the 1989 evidence was admitted is not prejudicial, because despite defendant's claim to the contrary, it was properly admitted to prove the existence of a common design or plan.

"This distinction, between the use of evidence of uncharged acts to establish the existence of a common design or plan as opposed to the use of such evidence to prove intent...is subtle but significant.  Evidence of *intent* is admissible to prove that, if the defendant committed the act alleged, he or she did so with the intent that comprises an element of the charged offense.  'In proving intent the act is conceded or assumed; what is sought is the state of mind that accompanied it.'...

"Evidence of a common design or plan is admissible to establish that the defendant committed the *act* alleged.  Unlike evidence used to prove intent, where the act is conceded or assumed, '[i]n proving design, the act is still undetermined....'" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 394, fn. 2.)

The *Ewoldt* court further explained: "To establish the existence of a common design or plan, the common feature must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual...[E]vidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be

15

1    relevant if these acts demonstrate circumstantially that the
     defendant committed the charged offense pursuant to the same
2    design or plan he or she used in committing the uncharged acts.
     [T]he plan need not be unusual or distinctive; it need only exist to
3    support the inference that the defendant employed that plan in
     committing the charged offense." (*People v. Ewoldt, supra,* 7
4    Cal.4th at p. 403.)

5    Defendant contends that the 1989 offenses and the charged offense
     are too dissimilar to establish a common plan or scheme. We
6    disagree. As we discussed previously, in both cases, defendant
     preyed on young girls, used subterfuge to commit sexual offenses,
7    and abused a position of trust. These similarities are sufficient to
     warrant a jury's inference that defendant employed the same plan
8    in committing the sexual offenses against these victims as he
     utilized in 1989.
9
     Defendant also argues that the 1989 evidence was inadmissible for
10   another purpose allowed under section 1101, subdivision (b),
     namely, to demonstrate the absence of any reasonable belief that
11   the victims consented to the sexual acts. As the court did not
     instruct the jury that the prior offense could have been used for this
12   purpose, we do not discuss this claim further.

13   (People v. Tor, slip op. at 8-12.)

14          Under Ninth Circuit law, the admission of "other acts" evidence violates the

15   Fourteenth Amendment's guarantee of due process only if there were no permissible inferences

16   the factfinder could have drawn from the evidence.  See McKinney v. Rees, 993 F.2d 1378, 1381

17   (9th Cir. 1993) (question is "whether any inferences relevant to a fact of consequence may be

18   drawn from each piece of the evidence, or whether they lead only to impermissible inferences

19   about the defendant's character"); Jammal, 926 F.2d at 920 ("[e]vidence introduced by the

20   prosecution will often raise more than one inference, some permissible, some not; we must rely

21   on the jury to sort them out in light of the court's instructions").  See also United States v.

22   LeMay, 260 F.3d 1018, 1027 (9th Cir. 2001) (evidence of prior similar crimes "will only

23   sometimes violate the constitutional right to a fair trial, if it is of no relevance, or if its potential

24   for prejudice far outweighs what little relevance it might have").

25          In LeMay the Ninth Circuit Court of Appeals held there is nothing fundamentally

26   unfair about allowing propensity evidence so long as protections, such as those provided under

16

1  Federal Rule of Evidence 403, remain in place to ensure that devastating evidence of little

2  probative value will not reach the jury.  260 F.3d at 1026.[5]  There is no exclusive list of factors

3  that courts should evaluate in determining whether to admit evidence of a defendant's prior acts

4  of sexual misconduct.  Rather, judges should consider factors relevant to individual cases, such

5  as (1) the similarity of the prior acts to the acts charged; (2) the closeness in time of the prior acts

6  to the acts charged; (3) the frequency of the prior acts; (4) the presence or lack of intervening

7  circumstances and (5) the necessity of the evidence beyond the testimony already offered at trial.

8  LeMay, 260 F.3d at 1028; Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1268 (9th Cir.

9  2000) (citing United States v. Guardia, 135 F.3d 1326, 1330 (10th Cir. 1998)).  "A court should

10  pay 'careful attention to both the significant probative value and the strong prejudicial qualities'

11  of that evidence."  LeMay, 260 F.3d at 1027 (quoting Glanzer, 232 F.3d at 1268).

12      The prior crimes evidence against petitioner clearly was relevant to the charged

13  crimes and, as noted by the appellate court, had a tendency to show similar modus operandi.

14  (People v. Tor, slip op. at 11-12.)  For this reason, there was a rational inference the trial court

15  could draw from the challenged evidence that was not constitutionally impermissible.  In

16  addition, like the trial court, the appellate court factored the relative timeliness of the prior

17  misconduct, noting that petitioner began his subsequent criminal acts only "four years" after

18  completing his imprisonment for the prior misconduct.  Id. at 6.  Finally, while petitioner's

19  conviction for forcible rape was nullified by the trial judge, the prior crimes evidence did involve

20  an actual conviction for unlawful intercourse, increasing its reliability.  See id. at 1029 ("the

21  extent to which an act has been proved is a factor that district courts may consider in conducting

22  Rule 403 inquiry").

23  _____

24      [5]  Fed. R. Evid. 403 provides: "Although relevant, evidence may be excluded if its
   probative value is substanially outweighed by the danger of unfair prejudice, confusion of the
25  issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless
   presentation of cumulative evidence."

26

1    Furthermore, as discussed in detail below, the trial court adequately weighed the

2  evidence under California Evidence Code section 352 to determine that its probative value was

3  not substantially outweighed by its prejudicial effect.  While damaging, the evidence of

4  petitioner's prior sexual assault clearly made the existence of some fact in controversy more

5  likely.  The relatively short amount of time between the acts and their similar modus operandi

6  made admission of the disputed testimony proper.

7    In addition, as it did with impeachment, the trial court gave the proper jury

8  instruction  relating to evidence admitted under California Evidence Code section 1101.  (RT

9  1074-75.)[6]  On this claim as well, petitioner provides no evidence to suggest that jurors failed to

10  understand or follow this instruction.  The court should once again presume that the jurors

11  utilized the challenged evidence solely for the purposes it was admitted.  See Francis, 471 U.S.

12  at 324 n.9 ("The court presumes that jurors, conscious of the gravity of their task, attend closely

13  to the particular language of the trial court's instructions in a criminal case and strive to

14  understand, make sense of, and follow the instructions given them.")

15    It was reasonable for the California Court of Appeal to conclude that the

16  admission of evidence of petitioner's prior sexual assault did not render petitioner's trial

17  fundamentally unfair.  Accordingly, the state court's determination to that effect must stand.  See

18  Early v. Packer, 537 U.S. 3, 11 (2002); Montana v. Egelhoff, 518 U.S. 37, 43, 116 S.Ct. 2013,

19  135 L.Ed.2d 361 (1996).  The admission of the "other crimes" evidence to show petitioner's

20  common plan and modus operandi was neither contrary to, nor an unreasonable application of,

21

22

23    [6]  The court originally instructed the jurors improperly, stating "[evidence admitted under
section 1101] if believed may be considered...to prove the defendant is a person of bad character
24  or that he has a disposition to commit crime.  (RT 1074:6-8.)  Immediately thereafter, the court
caught its error and said, "...wait a minute... I think I misread that, " and corrected the jury
25  instructions by properly instructing the jurors that "this evidence if believed may *not* be
considered by you to prove the defendant is a person of bad character or that he has a disposition
26  to commit crimes."  (emphasis added)(RT 1074:10, 16-18.)

controlling principles of United States Supreme Court precedent.[7]  Petitioner's third claim for relief should be denied.

D. <u>Weighing of Probative Value and Prejudicial Effect of Prior Act</u>

Petitioner's fourth claim is that the admission of live witness testimony about the conduct that led to petitioner's prior conviction violates his due process rights by permitting evidence whose probative value is substantially outweighed by its prejudicial effect.  According to petitioner, the court erred in its weighing of the value of T.P.'s testimony under California Evidence Code section 352.[8]  At a minimum, petitioner contends that the facts surrounding his prior conviction should have been limited to documentary evidence only.

The California Court of Appeal addressed this claim as follows:

> Under [California Evidence Code] Section 1101, the prosecution may not introduce evidence of other crimes to prove disposition to commit a charged act.  Section 1108, subdivision (a) is an exception to this general rule, and provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."
>
> In enacting this statute, "the Legislature decided evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of...section 1101. [Citations.]  The only restrictions on

---

[7]  This court also notes that the United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes."  <u>Garceau v. Woodford</u>, 275 F.3d 769, 774 (9th Cir. 2001), <u>overruled on other grounds by Woodford v. Garceau</u>, 538 U.S. 202 (2003).  In fact, the Supreme Court has expressly left open this question.  <u>See Estelle v. McGuire</u>, 502 U.S. 62, 75 n.5 (1991) ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").

[8]  California Evidence Code section 352 states that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

the admissibility of such evidence are those contained in...section 352." (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 405-406; see also *People v. Falsetta* (1999) 21 Cal.4th 903, 911-922; *People v. Fitch* (1997) 55 Cal.App.4th 172, 181-183.)

Recognizing that his 1989 conviction is otherwise admissible under section 1108, defendant argues the trial court should have excluded this evidence under section 352.  There was no abuse of discretion.

Under [California Evidence Code] section 352, "the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.]  Where, as here a discretionary power is statutorily vested in the trial court, its exercise of discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

Citing *People v. Harris* (1998) 60 Cal.App.4th 727, defendant contends evidence of the 1989 case was likely to confuse the jury.  We do not agree.  In *Harris*, the jury was presented with redacted and skewed evidence of the prior offense, which was apt to confuse the jury and lead them to punish defendant for the uncharged offense.  (*Id.* at pp. 733-736, 738-739.)  Here, T.P. described the incident with defendant, and the jury was told of the jury's verdict and defendant's conviction.  T.P.'s testimony was brief, and there was no likelihood the jury confused the incident with the charged offense.

Defendant asserts that the 1989 incident was of little probative value because it was remote.  The cases cited by defendant involved much longer periods of time than the 11 years involved here.  For example, in *People v. Rodrigues, supra,* 60 Cal.App.4th at p. 739, the prior offense happened 23 years earlier.  In *People v. Burns* (1987) 189 Cal.App.3d 734, the court found a 20-year-old conviction to meet "any reasonable threshold test of remoteness." (*Id.* at p. 738.)  In *People v. Antick* (1975) 15 Cal.3d 79, 99, the prior convictions were 17 and 19 years old.

More importantly, although defendant asserts he has led a blameless life since 1989, he ignores the fact that the charged offenses began in 1995, only four years after defendant completed his sentence for his earlier offense.  Under these circumstances, the 1989 offense cannot be deemed remote.  (*People v. Campbell* (1994) 23 Cal.App.4th 1488, 1496-1497.)

Defendant asserts that the probative value of the 1989 offense was negligible, because that act was dissimilar to the charged offenses.

He emphasizes that, in contrast to the present case, he and T.P. were in a dating relationship and close in age.  We agree there are clear difference between the two cases.  But there are also clear similarities.  In both cases, defendant preyed on young girls.  In both cases, defendant used subterfuge to commit sexual offenses.  And in both cases, defendant held a position of trust, which he abused.

Finally, defendant contends that, if the 1989 offense was in fact admissible under section 1108, the court should have allowed only documentary evidence of that offense and should not have permitted T.P. to testify.  Defendant did not seek such a limitation in the trial court, and he is therefore precluded from doing so now.  (*People v. Hood* (1997) 53 Cal.App.4th 965, 970.)

We note, however, that section 1108 expressly contemplates the introduction of testimony, not simply documentary evidence.  Subdivision (b) of the statute requires the prosecution to disclose to the defendant the evidence of other crimes that it intends to offer at trial, "including statements of witnesses or a summary of the substance of any testimony that is expected to be offered..."  And, as even a cursory review of cases under 1108 reveals, evidence of other offenses is virtually always presented through the testimony of the victims and/or other witnesses.  (E.g., *People v. Falsetta, supra,* 21 Cal.4th at pp. 909-910; *People v. Harris, supra,* 60 Cal.App.4th at pp. 734-735; *People v. Yovanov, supra,* 69 Cal.App.4th 392, 396-400; *People v. Soto* (1998) 64 Cal.App.4th 966, 990-992; *People v. Fitch, supra,* 55 Cal.App.4th at pp. 176-177.)  There is no legal basis for the limitation defendant suggests.

The trial court did not abuse its discretion in determining that evidence of defendant's 1989 offense was admissible under section 1108.

(People v. Tor, slip op. at 4-8.)

As explained above in response to petitioner's second claim, a state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process.  See Pulley, 465 U.S. at 41; Jammal, 926 F.2d at 919-20.  Accordingly, a federal court cannot disturb a state court's decision to admit evidence on due process grounds unless the admission of the evidence was "arbitrary or so prejudicial that it rendered the trial fundamentally unfair."  See Walters, 45 F.3d at 1357; Colley, 784 F.2d at 990; see also Mancuso, 292 F. 3d at 956 (a writ of habeas corpus

1  will be granted for an erroneous admission of evidence "only where the 'testimony is almost

2  entirely unreliable and ... the factfinder and the adversary system will not be competent to

3  uncover, recognize, and take due account of its shortcomings.'" (quoting Barefoot, 463 U.S. at

4  899)).  In addition, in order to obtain habeas relief on the basis of evidentiary error, petitioner

5  must show that the error was not harmless under Brecht, 507 U.S. at 619.  In order to grant relief,

6  the habeas court must find that the error had "'a substantial and injurious effect' on the verdict."

7  Dillard, 244 F.3d at 767 n.7 (quoting Brecht, 507 U.S. at 623).

8           The admission of testimony about the facts that led to plaintiff's prior conviction

9  is neither contrary to nor an unreasonable application of federal law and should not be set aside.

10  The testimony challenged by petitioner was neither likely to confuse the jury nor without some

11  probative value.  As the Court of Appeals noted, the brevity of T.P.'s testimony when compared

12  to the extensive testimony of the victims in this case, as well as the stipulation between the

13  parties describing the 1989 verdict and defendant's conviction, was sufficient to ensure that there

14  was no prejudicial effect through confusion of the issues.  (People v. Tor, slip op. at 5-6.)

15           In addition, the probative value of petitioner's prior acts was high.  The relatively

16  short period of time between the previous offense and the offenses for which petitioner was

17  charged in this case were sufficient to insure their probative value.  See Wilson v. Henry, 185

18  F.3d 986, 990 (9th Cir. 1999)(citing People v. Beagle factors, 6 Cal.3d 441, 99 Cal.Rptr. 313,

19  492 P.2d 1, 8 (1972), including remoteness in time, in assessing admissibility of prior acts); see

20  also People v. Harris, 60 Cal.App.4th 727 (1998)(holding that 23 year old acts were not

21  admissible); People v. Burns, 189 Cal.App.3d 734 (1987)(holding that 20 years is too remote);

22  People v. Castro, 38 Cal.3d 301, 312 (Cal.1985)(holding that there are no fixed rules for

23  determining admissibility of prior felony convictions).  There was no apparent danger that the

24  prior acts were too remote in time to have value for the factfinder.

25           Furthermore, the probative value of the previous act was enhanced by its

26  similarity with the charged offenses.  The prior act was similar in modus operandi to the charged

22

1   offenses.  As stated by the trial court, the age of the victims as well as their involvement in a

2   trusting relationship with petitioner were sufficiently probative to permit introduction of the

3   evidence.  Such findings are proper and do not "fatally infect[]" the trial such that it was

4   fundamentally unfair.  See Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986).

5         Finally, receipt of the complained of testimony in court through a live witness as

6   opposed to documentary evidence was not improper.  California Evidence Code section 1108

7   anticipates "statements of witnesses" about prior sexual offenses will be offered at trial.

8   Furthermore, the court was under no obligation to sanitize the evidence of plaintiff's prior

9   conviction.  The decision to admit testimony by T.P. describing the previous incident, as opposed

10   to introduction of documentary evidence about its occurrence, was solely within the discretion of

11   the trial court, well within the limits of normal practice, and did not violate any federal right

12   protected under the Constitution.  See Bockting v. Bayer, 399 F.3d 1010, 1040 (9th Cir.

13   2005)(affirming admissibility of live witness testimony about prior sexual assault); LeMay, 260

14   F.3d 1018 (permitting testimony by mother to describe prior sexual misconduct by accused

15   committed on her daughters); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir. 1986)(admitting

16   testimony by prior victim of sexual assault).

17         The balancing of the evidentiary factors by the court and its determination that

18   petitioner's previous conviction was admissible was neither contrary to, nor an unreasonable

19   application of, controlling principles of United States Supreme Court precedent.  The state

20   court's rejection of petitioner's fourth claim for relief was a reasoned conclusion consistent with

21   the guarantees of due process.  Petitioner's fourth claim for relief should be denied.

22         For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's

23   application for a writ of habeas corpus be denied.

24         These findings and recommendations are submitted to the United States District

25   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

26   after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 29, 2006.


UNITED STATES MAGISTRATE JUDGE

13/habeas
Tor1137.157